JAMES A. WHEATLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 9665.   Promulgated November 5, 1927.

1. Where an American citizen residing in the Argentine Republic
purchased a draft drawn in American dollars by the payment of
pesos, and where under the terms of the purchase he was entitled
to be reimbursed by the same number of pesos which he paid, and
where the purchase was made in the hope that the rate of ex-
change would rise and gain result, but where the rate fell and the
purchaser was compelled to pay a larger number of pesos, *held,*
the purchaser of the draft suffered a deductible loss.

2. The standard for measuring taxable income of an American
citizen residing in the Argentine Republic is the American dollar,
and where an American citizen acquires pesos which at the time
of acquisition had a certain stable value measured in dollars, and
where thereafter such value of pesos fell and the pesos so acquired
were sold, there resulted a deductible loss.

*James G. Stewart, Esq.,* for the petitioner.
*Granville S. Borden, Esq.,* for the respondent.

This proceeding results from the determination by respondent of
deficiencies in income tax for the years 1920 and 1921, in the respec-
tive amounts of $11,662.60 and $2,783.31.   The deficiencies arise from
the refusal of respondent to permit the petitioner to take the follow-
ing deductions: (1) In the year 1920, petitioner ascertained a debt
owing to him by Suchovolsky & Brother, to be worthless and charged
the same off within the taxable year; (2) losses sustained during the
years 1920 and 1921, resulting from the purchase and payments of
drafts; (3) losses sustained in the year 1921, resulting from the sale
of pesos; (4) losses sustained in the year 1921, from the sale of shares
of stock of the Ault & Wiborg Co.   It has been stipulated that peti-
tioner incurred a deductible loss in the year 1920, with respect to item
(1), in the amount of $4,943.70, and that he incurred a deductible loss
in 1921 with respect to item (4) of $4,218.25.

FINDINGS OF FACT.

Petitioner is a citizen of the State of Ohio.   From 1904 to 1920,
he resided at Buenos Aires, Argentine Republic, and since the latter
date, has resided at Cincinnati, Ohio.   During the time petitioner
resided at Buenos Aires, he was the general manager for the Argen-
tine Republic of the Ault & Wiborg Co., of Cincinnati, Ohio.   He
received a small salary and shared in the profits made by the South
American branch.

In September, 1920, the Ault & Wiborg Co. drew three drafts for the total sum of $48,335.90 on their funds in Buenos Aires. The amount represented by the drafts was due them for merchandise shipped to Argentine and sold for them by petitioner. Petitioner was directed by his employer to have all drafts paid promptly on their presentment, regardless of the rate of exchange prevailing on the day the same were presented for payment. The funds of Ault & Wiborg, on the date the drafts were received, were immediately charged with 130,177.36 paper pesos, the amount necessary to satisfy the drafts. When the drafts arrived in Buenos Aires, pesos had fallen in value as measured in American dollars. Petitioner, believing that the rate of exchange was too low and in hope it would soon become normal and believing he would make a profit by their becoming so, on September 23, 1920, authorized the bank to pay the drafts and charge them to him. The drafts were so paid and charged to petitioner. He became, on that day, entitled to and did receive from the Ault & Wiborg funds, the sum of 130,177.36 paper pesos. The rate of exchange, instead of rising, continued to fall, and on November 23, 1920, petitioner paid the drafts with 145,007.70 paper pesos. The difference between the number of pesos which would have paid the draft on September 23, 1920, and the number which was paid on November 23, 1920, when expressed in American money, was $4,943.46.

In September, 1921, the Ault & Wiborg Co. drew three drafts totaling $71,348.14 on their funds in Buenos Aires. For the reasons given above, petitioner authorized the bank to pay the drafts and charge them to him. The drafts were so paid and charged to petitioner. He subsequently executed a note to the bank for the amount of the three drafts. On December 16, 1921, he paid the note in paper pesos. The number of paper pesos paid was 216,476.74. The number of paper pesos which would have paid the drafts when petitioner accepted payment, was 188,910.41. The difference between these amounts as expressed in American money, was $9,085.53.

Petitioner, during his stay in Buenos Aires, accumulated more than half a million paper pesos, which were accumulated at the normal rate of exchange of 1.05. In March, 1921, an installment payment of $4,000 became due to the collector of internal revenue, in payment of Federal income tax, and he went to his bank in Buenos Aires and bought a draft for $4,000, sending the same to Cincinnati in payment of his tax. He bought the draft for $4,000 with the paper pesos which he had accumulated, at the normal rate of exchange of 1.05. The draft for $4,000 cost him 11,554.55 paper pesos. At the normal rate of exchange of 1.05, it would have cost him 9,545.45 paper pesos to have bought the draft. Petitioner paid 2,009.10 more paper pesos

for the draft than it would have cost him at the rate of exchange at which he had acquired his South American capital. The 2,009.10 paper pesos was the equivalent of $695.51 United States money.

On July 1, 1921, petitioner was in Cincinnati, and, by cable, drew on his funds in Buenos Aires, for $5,000, to pay an installment on his income tax. This sum cost him 16,727.27 paper pesos. At the normal rate of exchange at which he had accumulated his South American capital, the $5,000 which he purchased would have cost him 11,931.82 pesos. The difference of 4,795.45 paper pesos was the equivalent of $1,433.42 United States money.

On December 9, 1921, petitioner was in Cincinnati, and, by cable, drew on his funds in Buenos Aires for $5,000 to pay an installment on his income tax. This sum cost him 15,306.82 paper pesos. At the normal rate of exchange at which he had acquired his South American capital, the $5,000 which he purchased, would have cost him 11,921.81 pesos—the difference of 3,375.01 paper pesos amounted to $1,102.50 United States money.

During the years involved, the relative value of gold and paper pesos remained stable but there were violent fluctuations in exchange with the United States.

For many years prior to 1920, the rate of exchange was practically normal at all times, but in that year the value of pesos, as measured in dollars, began to fall.

OPINION.

MILLIKEN: Petitioner was instructed by his employers, Ault & Wiborg Co., to promptly pay all drafts upon presentment. Under this direction the funds of the latter became immediately available and were applied to the extent necessary to pay the drafts at the time presented for payment. Petitioner had lived in South America for years, and had never experienced so violent a fluctuation in the rate of exchange, and believing that the same would soon be normal, assumed the payment of the drafts to the bank. The funds of Ault & Wiborg Co. were passed to him, corresponding to the then prevailing rate of exchange. He believed he would be required eventually to pay to the bank fewer pesos than was necessary to then pay the drafts and he believed he stood to make a gain represented by the difference between the funds of Ault & Wiborg passed to him and the sum he would be required to pay when the rate of exchange became normal. When he undertook to and did assume payments of the drafts, he entered into a transaction for profit. His expectations were not realized and instead of making a profit, he sustained a loss. This loss is deductible under section 214(a)(4) of the Revenue Acts of 1918 and 1921.

Petitioner is an American citizen and as such must pay an income tax on his earnings, regardless of the place of his residence or the fact that his entire income was earned in Buenos Aires. His standard for measuring the amount of his annual income was the American dollar. Paper pesos were nothing more than a commodity, which, for tax purposes, must be translated into American dollars. During his stay in Buenos Aires, he had accumulated 500,000 paper pesos which when earned bore the normal rate of exchange. It was in effect the same as if he had lived in Cincinnati during the entire time of his residence in Buenos Aires, and had purchased, with his capital, paper pesos at the normal rate of exchange, and in the year 1921, he sold the paper pesos, converting the same into his standard, i. e., American dollars. Petitioner, in effect, did this when he converted sufficient paper pesos to buy a draft for $5,000 and the difference between the rate at which he secured the paper pesos and the rate at which he disposed of the paper pesos constitutes a deductible loss sustained in the year 1921.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*